## Morris Center, *et al.*, v. B. C. McQuesten.

1. PRINCIPAL DEBTOR, *Becoming a Surety Only; Garnishment.* M., as cashier of a bank, held a certain promissory note against C., and C., to secure the payment of the debt, executed to M. a chattel mortgage on some cattle, and filed the mortgage with the register of deeds and notified M. thereof, who was satisfied therewith. The mortgage was irregular, and possibly, if considered alone, might be held to be void, but, considering it along with all the other facts of the case, it could hardly be considered void. Some time after its execution, C. sold the cattle to W., and W. agreed to pay the debt for which said note and mortgage were given, and thereby to remove the mortgage lien from the cattle. W., intending to pay said debt and to extinguish said lien, went to M.'s bank, taking sufficient money with him for that purpose, and called for the note and mortgage. M. not being in, S., the assistant cashier of the bank, who had sufficient authority therefor, presented the note and agreed to receive the money due thereon; but, not having the mortgage, W. went out of the bank to hunt for the mortgage, and while gone, and within a few minutes after leaving the bank, was garnisheed at the instance of H., a creditor of C., and who had previously had notice of said mortgage and of the arrangement between C. and W. *Held,* That, under the circumstances of this case, M. became entitled to receive said fund in the hands of W.; that W. became the principal debtor to M., with C. only as a surety; and that the said sum was not subject to garnishment at the time the garnishee process was served on W.

*Error from Franklin District Court.*

ACTION brought by *McQuesten* against *Williams,* upon a certain promissory note. Thereafter Morris Center, Henry Center and Joshua Hodges were made parties defendant. The nature of the action and the facts appear in the opinion, and in the case of *Center v. McQuesten,* 18 Kas. 476. Trial by the court at the January Term, 1878, when the court, upon the findings of fact and conclusions of law, rendered judgment as follows:

"It is therefore considered by the court here that the clerk of this court pay over to the plaintiff B. C. McQuesten the said sum of $506, so as aforesaid paid into court (the said plaintiff waiving interest thereon and remitting the same), and that the plaintiff do recover of the defendants William Williams, Joshua Hodges, Henry Center and Morris Center, his costs," etc.

The defendants excepted, and bring the case here.

*J. H. Goodin,* and *A. W. Benson,* for plaintiffs in error.

*Jno. W. Deford,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: We have once before had this case under consideration. (*Center v. McQuesten,* 18 Kas. 476.) At that time the judgment of the court below was reversed, and the cause remanded for further proceedings. A new trial was had in the court below, before the court without a jury, and new facts were elicited and found by the court, and judgment was again rendered in favor of the plaintiff below, B. C. McQuesten, and a portion of the defendants below, to wit, Morris Center, Henry Center and Joshua Hodges again bring the case to this court for review. The findings of the court below are as follows:

"1. That on the 15th day of January, 1874, H. E. Cowgill executed and delivered to the People's National Bank, of Ottawa, the note mentioned in plaintiff's petition; that said note was duly indorsed by H. S. Deford, and demand and notice waived.

31 — 24 KAS.

"2. That the maker of said note paid thereon, February 9th, 1874, the sum of $100, and that the balance of said note remains unpaid.

"3. That before said note became due, said Cowgill proposed to the plaintiff (who was the cashier of said national bank and custodian of said note) for an extension of time for payment thereof, and offered to secure the same by a chattel mortgage upon cattle; that said plaintiff declined to take the chattel mortgage himself, but suggested that the mortgage might be given to an additional indorser to be furnished by said Cowgill.

"4. That said Cowgill, on the same day of the payment of said $100, executed, and on the 12th day of February thereafter caused to be filed in the office of the register of deeds in Douglas county, where said Cowgill resides and where said cattle then were, a chattel mortgage to plaintiff upon thirty head of cattle, for the purpose of securing said note, and afterward, and on February 24th, informed said plaintiff by letter that he had secured said note by such chattel mortgage.

"5. That afterward, on the 9th day of March, 1874, Cowgill sold and delivered to defendant Williams 53 head of cattle, including the 30 head so mortgaged as aforesaid, and upon the whole of which cattle so sold there were other mortgages to various parties.

"6. That at the time of such sale and delivery, said Williams paid to said Cowgill the balance of the purchase-money, after deducting the amount due upon the several mortgages thereon, including the mortgage to the plaintiff, and also paid to the said mortgagees the several amounts due to them respectively, excepting the amount then due to plaintiff upon the note aforesaid, being the sum of $506, which said sum said Williams thereupon agreed with said Cowgill to pay to said plaintiff in full for the remainder of the consideration for said cattle.

"7. That at the sale and delivery of said cattle, the mortgage from said Cowgill to the plaintiff was by said Williams and Cowgill spoken of and recognized as a valid and subsisting lien upon 30 head of said cattle so purchased and delivered, and that the defendants Hodges, Morris Center and Henry Center were present at said sale and delivery, and Morris Center was told by said Cowgill of the mortgage to plaintiff.

"8. That afterward, defendants Joshua Hodges, Henry

Center and Morris Center severally recovered judgments against Cowgill, the maker of the note in the petition mentioned, before a justice of the peace in Franklin county.

"9. That in said actions attachments were duly issued, and on March 14th, 1874, an order was in each case served upon defendant Williams to appear and answer as garnishee, but that prior to the service of said order, and on the 14th day of March, 1874, said Williams had appeared at the People's National Bank where said note then was held, and called for the said note and mortgage to pay the same.

"10. That the vice president of said bank presented said note to Williams for payment, and said Williams was then ready and willing to pay the same, and said vice president was ready and willing to receive payment thereon, but said Williams required also the chattel mortgage before making payment, and left the bank for the purpose of procuring the same of H. S. Deford, the indorser of said note, and whilst on his way to said Deford, was served with said garnishee process as aforesaid.

"11. That said William Williams duly appeared and answered as garnishee in each of the cases of Morris Center v. H. E. Cowgill, Henry Center v. H. E. Cowgill, and Joshua Hodges v. H. E. Cowgill, before said justice; that judgments thereupon were duly rendered by said justice in said cases respectively, and against H. E. Cowgill, as follows: Morris Center, $152.85, accruing costs, $3.65; Henry Center, $127.80, accruing costs, $2.00; Joshua Hodges, $275.40; and on the 17th day of April, 1874, said justice made orders in each of said cases that the garnishee, Williams, should pay into said court upon said judgments and as such garnishee upon his said answer, the following sums, viz.: In case of Morris Center, $156.41; in case of Henry Center, $129.80; in case of Joshua Hodges, $224.90. That upon said last-named order the defendant, Williams, out of money in his hands belonging Cowgill (other than the said fund of $506,) paid the sum of $33, leaving the sum of $191.90 unpaid on said order, and in favor of Joshua Hodges, April 22, 1874.

"12. The court further finds, as matter of fact, that the said defendant, William Williams, on the 3d day of August, 1874, deposited with the clerk of this court, subject to the order of the court, the sum of $506, being the balance of said consideration for said 53 head of cattle remaining in the hands of said Williams on the 10th day of March, 1874.

"13. That from the said order of the justice of the peace requiring said William Williams to pay into said justice's court the said several sums of money on said judgments against said H. E. Cowgill, said William Williams duly appealed to this court, wherein said appeals were duly docketed, and were by the said plaintiffs therein, the said Henry Center, Morris Center and Joshua Hodges, dismissed at their costs respectively, on the 7th day of August, 1874."

Of the findings above, No. 11 was asked by the defendants, Morris Center, Henry Center and Joshua Hodges, and No. 12 was asked by the defendant William Williams, and the finding No. 13 was asked by the plaintiff.

(*Conclusions of Law:*) "1. That by the arrangements of Williams and Cowgill for the sale and delivery of said cattle, and the agreement of said Williams to pay said note to McQuesten, said Williams became the principal debtor to McQuesten, and Cowgill became his surety; and that thereupon a cause of action arose, whereby the plaintiff might maintain an action against defendant Williams for said sum of $506.

"2. That the plaintiff, by assenting through the cashier of said bank to the arrangement made for Williams to pay the money on said note, adopted said contract as his own; and it thereby became as binding and effectual as though he had originally been a party to it.

"3. That the plaintiff is entitled to recover in this action the said sum of $506 and interest since March —, 1874, against defendant Williams, and that defendants Joshua Hodges, Morris Center and Henry Center have not, nor has any one of them any interest in or right to said money or any part thereof."

The said note was for $606, executed by H. E. Cowgill, payable to H. S. Deford, dated January 15, 1874, due forty days after date, indorsed in blank (with the exception of a waiver of demand and notice) by H. S. Deford, and held by the plaintiff B. C. McQuesten, as cashier of the People's National Bank, of Ottawa. Deford was merely an accommodation indorser for Cowgill. The sum of $506 was due on this note when the said chattel mortgage was executed and when said garnishment proceedings were commenced. We should think that all the parties had notice, actual as well

as constructive, of the existence of said chattel mortgage before said garnishment proceedings were commenced. Joshua Hodges and Morris Center certainly had such notice, as was shown by their own testimony; and Morris Center, who was the father of Henry Center, seems to have acted for and as the agent of Henry Center. Cowgill executed the mortgage, and was the mortgagor; Williams agreed to pay it; and McQuesten, who was the mortgagee, testifies that after receiving Cowgill's letter notifying him of it, he was content and rested securely. The mortgage did not describe the indebtedness of Cowgill to McQuesten or the said note very accurately. It described the indebtedness as being $500, payable in four months, according to the tenor of a note then delivered and of even date with the mortgage, which was February 9, 1874. The mortgage was executed to get an extension of time for the payment of this note. This was the only note which McQuesten held against Cowgill.

We think the judgment of the court below must be affirmed. It is possible that no single fact or set of facts less than the whole of them would authorize an affirmance. But taking all the facts together, we think the judgment is right, and should be affirmed. Taking this view of the case, it would be useless to discuss any of the facts unless we discuss the whole of them, and to discuss the whole of them would require too lengthy an opinion. The mortgage was irregular, and possibly, if considered alone, might be held to be void, yet, considering it along with all the other facts of the case, we think we could hardly declare it void; and Cowgill, Williams and McQuesten believed it to be valid. Cowgill and Williams believed it to be a valid and subsisting lien on thirty head of the cattle which Williams bought of Cowgill; and, to remove that lien, it was agreed that Williams should retain $506 of the purchase-money and pay it to McQuesten, the supposed holder of the lien. The Centers and Hodges knew of this arrangement. For the purpose of paying the note and mortgage, and of extinguishing said lien, Williams went to the People's National Bank, of Ottawa, to see McQues-

ten, and he took said $506 with him. McQuesten was out, but Shiras, the vice president and assistant cashier of the bank, the officer who acted for and in the place of McQuesten when McQuesten was out, and who, for the purposes of this case, must be considered as the agent of McQuesten, was in, and he presented the note to Williams, and agreed to take the money from Williams. We think that then, if not before, McQuesten became entitled to the money, and that then, if not before, Williams became the principal debtor to McQuesten, and that Cowgill was then nothing more than Williams's surety. After this, and within a few minutes thereafter, and while Williams was hunting for the mortgage, he was served with the said garnishee process. We do not think that the fund in his hands was then subject to garnishment, and we form this opinion from all the facts of the case, and not from any isolated facts. In the case of *Rogers v. Gosnell*, 58 Mo. 589, it was held that, "It is now the prevailing doctrine that an action lies on the promise made by a defendant upon a valid consideration to a third person for the benefit of a plaintiff, although the plaintiff was not privy to the consideration." (58 Mo. 590, and cases there cited.) "It is a presumption of law that when a promise is made for the benefit of a third person, he accepts it, and to overthrow this presumption a dissent must be shown." (58 Mo. 591.)

The judgment of the court below will be affirmed.

All the Justices concurring.