HUGO KINNER, Respondent, v. PAULINE TSCHIRPE'S Executors, Appellants.

St. Louis Court of Appeals, October 24, 1893.

1. **Instruction, Defect In:** WHEN CURED BY CORRECT INSTRUCTION. Before the error in one instruction can be cured by another instruction which is correct, the entire charge must be consistent.

2. **Contracts:** RIGHT OF PARTY RENDERING SERVICES TO COMPENSATION. If a party rendering services intends that they should be gratuitous when he renders them, he cannot subsequently recover therefor; nor is it necessary, in order that he should be debarred from the right to compensation, that the party accepting the services should also have considered them as gratuitous.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*Rassieur & Schnurmacher*, for appellants.

*Lubke & Muench*, for respondent.

ROMBAUER, P. J.—The plaintiff, who is a practicing physician, exhibited in the probate court for allowance an account for medical services rendered to the defendants' testatrix. The account being disallowed by that court, he appealed to the circuit court, where upon a trial before a jury he recovered judgment for $1,088.00, from which the defendants prosecute this appeal, assigning for error that the court misinstructed the jury, and that the verdict is not supported by the evidence.

The account presented for allowance is as follows: "Pauline Tschirpe, to Dr. Hugo Kinner, Dr.

"To medical attendance during last illness as follows:

| | | |
|---|---|---|
| 1886. January and February, 30 visits at $3 | $ .90.00 | |
| "September to December, inclusive, 120 visits at $3 | 360.00 | |
| 1887. January, February, March, April, May, June, July, August and September, 290 visits at $3 | 870.00 | |
| 1888. February and March, 25 visits at $3 | 75.00 | |
| "October and November, 15 visits at $3 | 45.00 | |
| 1889. September, October, November and December, 35 visits at $3 | 105.00 | |
| 1890. March and April, 20 visits at $3 | 60.00 | |
| "November and December, 15 visits at $3 | 45.00 | |
| 1891. January, February, March, April and to date of death, 115 visits at $3 | 345.00 | |
| And occasional medicines | $1,995.00" | |

The evidence tended to show that the deceased was an aunt of the claimant, and his only relative in St. Louis outside of his own family. She resided at a considerable distance from the claimant, and maintained her own establishment. She was of a very advanced age and had been for years prior to her decease in very delicate health, suffering from a complication of diseases. The claimant attended her in a professional capacity during the periods stated in the account, but there was some conflict in the evidence whether such attendance was voluntary or by request of the deceased. There was no proof of the exact number of visits, but their frequency within the years mentioned in the account was shown to such an extent as to warrant the inference that the account in that regard was not excessive. The expert evidence offered by the claimant fixed the minimum value of professional visits, when made at a distance from the physicians' residence, at $3.00 per visit. There was evidence that medicines had been furnished by the claimant, but no evidence of their value.

The court upon plaintiff's request instructed the jury as follows:

"The court instructs the jury that, if they believe from the evidence that plaintiff rendered medical services and gave medicines to the deceased, Pauline

Tschirpe, at her request, then her estate is liable to plaintiff for the reasonable value of such services and medicine, to be determined by the jury from the evidence, unless the jury should find from all the evidence and circumstances in evidence before them that such services and medicines were furnished by plaintiff and accepted by her with the expectation, on the part of both plaintiff and said Pauline Tschirpe, that such services and medicines should not be paid for.

"The court further instructs the jury that from the rendition of valuable services by one party for another, which such other party receives the benefit of, the law implies a promise on the part of the person receiving the same to pay all reasonable value of such services, unless the same were rendered by the one and accepted by the other with the expectation on the part of both that such services should not be paid for."

And upon defendants' request:

"If the jury believe from the evidence that Dr. Kinner, the claimant, made the visits here sued for voluntarily and without request on the part of the deceased, and that at the time he made said visits he had no intention of charging for the same, then the jury cannot now return any verdict in his favor on account thereof.

"The court instructs the jury, if they should find for the claimant, they can only, in assessing his damages, take into account such of the visits in the account charged for as the jury are satisfied from the evidence the claimant made. The account itself is not to be regarded by the jury as evidence of the number of visits made."

The defendants claim that these instructions are irreconcilable in this, that, while the defendant's first instruction tells the jury that the plaintiff cannot

recover if he did not *intend* to charge for his services when they were rendered, yet the instructions given for plaintiff advise the jury that in order to defeat such recovery *both parties must have expected* that such services should not be paid for.

That these instructions cannot be reconciled on this particular point seems to be evident, and, if the defendant's instructions do state the correct rule, the judgment must be reversed. We have always adhered to the rule that, before the error in one instruction can be cured by another, the entire charge must be consistent, and the qualification of an incomplete instruction by another must distinctly appear. *McNichols v. Nelson*, 45 Mo. App. 446; *State v. Brumley*, 53 Mo. App. 126, 130.

The defendant's instruction under the uncontroverted evidence states the correct rule. There certainly was evidence in this case from which it was fairly inferable that the plaintiff at the time of rendering the services did so gratuitously. The deceased was the near relative of the claimant, although not a member of his household. One of the plaintiff's witnesses, a servant of Mrs. Tschirpe for many years, stated that, while she went for medicines to the doctor frequently, she was not instructed by her mistress to call him; that the plaintiff called voluntarily, and sometimes called "because she was his aunt." Although these visits extended through a period of years, it was not shown that any cotemporaneous entries touching them were made by the claimant, such entries being provable and admissible in evidence under our statute, as construed in *Anchor Milling Co. v. Walsh*, 108 Mo. 277.

Now, if the services, when rendered, were intended to be gratuitous, the plaintiff could not by a subsequent change of intention turn them into services to be paid for. *Lippman v. Tittmann*, 31 Mo. App. 69. The right

to compensation accrued immediately upon the rendition of the services, it at all. If I *give* my property to to another, I cannot recover from him its value upon a bare showing *that he received it with the expectation to pay for it.* In absence of an express promise, the cotemporaneous intention of both parties that the services should be paid for must be implied to create an enforceable promise to that effect; the donor's cotemporaneous intention *to give and not to sell* is sufficient to defeat a recovery on his part. *Bittrick v. Gilmore*, 53 Mo. App. 53. The error in the instructions consists in not recognizing this distinction, and was clearly prejudicial to the defendants under the evidence.

In view of a retrial we add that we find no reversible error in other respects in the instructions. It clearly appears from the account filed that no separate charge was intended to be made for medicines to be furnished, but that they formed part of the visits. There was no evidence of the value of such medicines, and in the absence of any claim on their account, and of any evidence in support of the claim, we cannot for the purpose of defeating the verdict indulge in the presumption that the jury allowed anything on their account. The court and jury evidently treated the foot note about medicine in the account as part of the item of visits. Upon a retrial, however, the word medicines had better be omitted from the instructions.

Equally unfounded is the defendant's complaint, that the instructions given for the plaintiff erroneously ignore the relationship between the parties as a fact to be considered by the jury in determining whether there was an implied promise to pay. The fact is that the court did not ignore the fact, but misdirected the jury as to what circumstances would negative an implied promise. Had it entirely omitted the qualification, it would have been a mere non-direction,

supplemented by the defendant's instructions. We suggest, however, that it is the safer rule in these cases to add the qualification to the instruction itself, as was done in *Hart v. Hart's, adm'r*, 41 Mo. 444, where an instruction thus qualified is approved by the supreme court.

The judgment is reversed, and the cause remanded to be proceeded with in conformity with this opinion. All the judges concur.